# East Ala. Railway Co. *v.* Tenn. & Coosa Rivers Railroad Co.

*Statutory Action in nature of Ejectment, for Railroad.*

1. *Former decision re-affirmed.*—On the former appeal in this case (75 Ala. 516-30), it was decided that the plaintiff corporation had established its right to recover so much of the railroad, with right of way and superstructure, as it had located, cleared and graded at the time of its conditional sale and transfer to the purchasing corporation from which the defendant derived title; that said purchasing corporation, acquiring

[East Ala. Railway Co. v. T. & C. Rivers R. R. Co.]

its possession and rights under said conditional sale and conveyance, was estopped from denying that plaintiff had ever procured the right of way from the owners of the freehold; that this estoppel was equally binding on the defendant, a derivative purchaser from said purchasing corporation; and that neither the subsequent bankruptcy of the purchasing corporation, nor the sale of the road under the proceedings in bankruptcy, nor the foreclosure and sale of the property under the mortgage in trust for the bondholders, impaired plaintiff's right of recovery. The court adheres to these conclusions as then announced, without re-examination of the questions involved.

2. *Estoppel against purchaser of railroad; on whom binding, and to what extent.*—The defendant corporation in this case, having acquired its possession and title to said railroad property from the corporation which bought from the plaintiff, is equally bound by the estoppel; but this estoppel only extends to the five miles of road between Attalla and Gadsden, which had been surveyed, located, cleared and graded at the time said sale and purchase was made. As to that portion of the road which lies between "Christopher's Cut" and the Coosa river, a gap of about one mile, the evidence does not show that plaintiff, at the time said contract of sale was made, had acquired the right of way, or had definitely surveyed and located the road, or was in possession by any visible marks of ownership; and even if the purchasing company were estopped from denying that it acquired this portion of the road under its contract of purchase from plaintiff (which is not decided), the estoppel would not be operative against parties claiming under a mortgage executed by the purchasing company before the contract was made, but after said company had located and graded this part of the road as a portion of its own line.

3. *Right of way for railroad; nature of, and how acquired.*—The right of way for a railroad is an easement—an interest in the freehold; and it can only exist in grant, or by prescription.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. LEROY F. BOX.

This action was brought by the Tennessee and Coosa Rivers Railroad Company, a corporation chartered by an act of the General Assembly of Alabama, approved January 16th, 1844; and was commenced on the 23d June, 1880. The East Alabama Railway Company, a corporation created under the general laws of the State on the 12th June, 1880, was made a defendant on its own motion, as the landlord of the original defendants; and pleaded the general issue, with several special pleas (which require no special notice), and also made a suggestion of adverse possession for three years and the erection of valuable improvements; and the cause was tried on the several issues joined. The property sued for was thus described in the original complaint. "The following real estate—that is to say, the track or road-bed of the plaintiff as the same was located at and before July 12th, 1871, from Gunter's Landing, in Marshall county, in the State of Alabama, to Gadsden, in Etowah county in said State, together with all their right of way, grading, trestles, masonry work, culverting work, and property on said line so located, including the railroad from Gadsden to Attalla, in said county of Etowah, as now used

and operated by the defendants; which railroad is the only railroad from Gadsden to Attalla, and is attached to the soil, and is now, and was at the commencement of this suit, used and operated as a railroad by the employees of the defendant corporation, and by the direction and authority of that corporation; and including also the appurtenances to said railroad from Gadsden to Attalla." By amendment of the complaint, that part of the property lying in Marshall county was struck out; and by a second amendment, allowed after the reversal of the judgment on the former appeal (75 Ala. 516), the property sued for was thus described: "The right of way along the whole line of said railroad as now located, completed and operated, from the point on the Coosa river between the base of Lookout Mountain and Ten Island Shoals, and within the corporate limits of Gadsden, to Attalla and the Alabama Great Southern railroad; the said right of way being one hundred feet in width," &c. The verdict of the jury, under the charges of the court, was in these words: "We, the jury, find all the issues in favor of the plaintiff, and find the suggestion of adverse possession to be untrue; and we find that all the property sued for, and described in the complaint as amended, the railroad and the right of way from the Coosa river to Attalla, mentioned in the complaint as amended, was at the commencement of this suit, and still continues to be, the property of the plaintiff, except only so much of the curve at Attalla as is more than fifty feet from the centre of said railroad bed," &c.

On the trial, as the bill of exceptions shows, the plaintiff read in evidence a deed dated July 12th, 1871, duly executed and delivered by it to the East Alabama and Cincinnati Railroad Company, conveying its right of way, franchise and property. The deed, after setting out a proposal to purchase made by the latter company, and the acceptance of that proposal by the former, continued thus: "Now this indenture witnesseth, that the said Tennessee and Coosa Railroad Company, by its president, by reason of the premises, hath granted, bargained, sold and conveyed, and by these presents doth grant," &c., "unto the said East Alabama and Cincinnati Railroad Company, the track or road-bed as at present located, from Gunter's Landing in Marshall county, to Gadsden in Etowah county, in the State of Alabama, of the said Tennessee and Coosa Railroad Company, together with all their right of way, grading, trestles, masonry work, culverting work and property on said line so located; in and for the consideration that the said East Alabama and Cincinnati Railroad Company shall pay off and discharge the floating debt of the said Tennessee and Coosa Railroad Company, not to exceed the sum of $25,000—one-fourth in money, and the remainder in the first mortgage bonds

[East Ala. Railway Co. v. T. & C. Rivers R. R. Co.]

of said East Alabama and Cincinnati Railroad Company, in-
dorsed by the State of Alabama, and numbering from 320 up-
wards; to have and to hold," &c. "*Provided, however*, that
this deed is to have effect and be operative, only upon the ex-
press condition and understanding, that the said East Alabama
and Cincinnati Railroad Company shall commence work on
said line so above conveyed, at Gadsden, within seventy days
from said 26th June, 1871; and that the road shall be com-
pleted, from Gadsden to Attalla, by the first day of October
next, and thirteen miles from Gadsden, or to the foot of Sand
Mountain, by the first day of January, 1872, and the whole
road in two years from the first day of October, 1871; the
bonds of said company, to be indorsed by the State, to be taken
at market value, not to be less than ninety cents on the dollar,
and the money paid in seventy days from the delivery of this
deed. The said East Alabama and Cincinnati Railroad Com-
pany is to issue stock of the said East Alabama and Cincinnati
Railroad Company, for the paid up stock of the said Tennessee
and Coosa Railroad Company, not to exceed $50,000. *And
provided*, that the said East Alabama and Cincinnati Railroad
Company shall ratify and approve the contract made by Colt,
Boyle & Co., with J. S. Pennington, president, for building
the remainder of the East Alabama and Cincinnati Railroad
from the city of Eufaula to Guntersville; said stock not to be
issued until the road is completed to the foot of Sand Moun-
tain, as above specified. In testimony," &c.

The East Alabama and Cincinnati Railroad Company was
originally incorporated in 1869, or 1870, under the name of
the Eufaula, Opelika, Oxford & Guntersville Railroad Com-
pany; and was authorized to construct a railroad from Eufaula,
by Opelika and Oxford, to Guntersville. Before the purchase
of said road from the Tennessee and Coosa Rivers company, it
had commenced the work of building its road, and had exe-
cuted a mortgage, or deed of trust, to W. H. Barnes and Henry
Clews as trustees, to secure the payment of its first mortgage
bonds, on which it would be entitled to the State's indorsement
when the first twenty miles of its road were completed. The
first twenty miles of the road, from Opelika northward, were
completed, the State's indorsement of the bonds procured, and
the bonds issued and used by the company; and after said con-
tract of purchase was made, the company finished the five
miles of road extending from the river at or near Gadsden to
Attalla, where it made a connection with the Alabama Great
Southern road. This was completed before the 1st October,
1871, the time specified in the contract of purchase; but no
other work was done on the road, and the company was adju-
dicated a bankrupt in 1873. Under a decree rendered in the

matter of the bankrupt estate, the franchise and property of the company were sold by the assignee, and bought by James I. Colt and his associates, to whom the assignees executed a conveyance, under the order of the court, dated May 14th, 1874. The Tennessee and Coosa Rivers Railroad Company was not a party to the proceedings in bankruptcy; and the sale was made subject to the lien of the State on account of the indorsed bonds, and to the lien created by the deed of trust to Barnes and Clews. These purchasers took possession of the road, and continued to operate it until it was again sold, under a decree of the Chancery Court, under a bill filed by said Barnes and Clews to enforce and foreclose the deed of trust, and to adjust the priorities and conflicting claims of the different creditors.—See the case reported, *Colt v. Barnes*, 64 Ala. 108. At the sale made by the register under the decree in that case, on the 5th April, 1880, Perkins, Livingston and others became the purchasers, and received a conveyance from the register; and they organized themselves, on the 12th June, 1880, under the general laws of the State, into a new corporation under the name of the East Alabama Railway Company. The Tennessee and Coosa Rivers Railroad Company was not a party to this chancery suit; and having entered on the land, for condition broken and failure of performance on the part of said original purchasing company, was dispossessed under the process of the court, at the instance of said Perkins, Livingston and their associates. This action at law was then instituted, June 23d, 1880, and the defendant corporation filed a bill in equity to enjoin its prosecution; but the bill was dismissed by this court on appeal, and the plaintiff's legal title sustained.—*Tenn. & Coosa Railroad Co. v. East Ala. Railway Co.*, 73 Ala. 426.

The facts above stated, which may be found stated with greater detail in the reports of the several decided cases as cited, were proved on the trial by the record of the proceedings in those cases. The plaintiff adduced evidence, also, showing the condition of the road-bed between Gadsden and Attalla on said 12th July, 1871, and the loss of a package containing conveyances of the right of way which it had previously procured; but no particular names or parcels of land were specified, and several exceptions were reserved to the rulings of the court in admitting this evidence. The defendant adduced evidence, also, showing the work which had been done, after the 12th July, 1871, in extending the road from "Christopher's Cut" to the river; and produced several conveyances of the right of way along the route between those points, which the purchasing company had procured prior to June 12th, 1871.

On all the evidence adduced, which it is unnecessary to state

[East Ala. Railway Co. v. T. & C. Rivers R. R. Co.]

at length, the court gave the following (with other) charges to the jury:

1. "If the jury believed, from the evidence, that previous to the execution and delivery of said deed of July 12th, 1871, plaintiff had located a line from Wragg's mill, through Gadsden, to the Coosa river, by surveying and locating the same over the route where the road now runs, but had done no other work or grading on it; and that the East Alabama and Cincinnati Railroad Company took such located route, road-bed and right of way, under said deed; the plaintiff may recover such part of the road from the defendant, if the evidence in other respects entitles the plaintiff to recover, although the Eufaula, Opelika, Oxford and Guntersville Railroad Company may have acquired rights of way from the land-owners in June, 1870, and graded the same, before said deed of July 12th, 1871, was executed; unless the defendants have been in the adverse possession of that part of the road for ten years before suit brought."

2. "Surveying a route for a railroad, and locating a line over it, and the adoption of the line so located by the proper authority of the railroad company, as the route to be used in building it, made and constituted a road-bed, whether any grading or other work was done on the same or not; and the plaintiff in this action may recover, if the jury are satisfied from the evidence that such location was made prior to the execution of said deed of July 12th, 1871, if the evidence in other respects satisfies the jury to a reasonable certainty that the plaintiff is entitled to recover."

3. "The said deed of July 12th, 1871, embraced and included all the track, road-bed and right of way which had been located or graded by plaintiff previous to that time, between Attalla and the Coosa river at Gadsden."

The defendant duly excepted to each of these charges as given, and requested several charges in writing, among which were the following: (1.) "As matter of law, on a construction of said conveyance of July 12th, 1871, neither the proposal of Barnes therein recited, nor the deed itself, contemplated the purchase or acquisition of any property within the corporate limits of Gadsden." (2.) "The defendants, not being estopped from setting up any defense they can make, as to any property sued for which lies in Gadsden, if the jury believe that the said Eufaula, Opelika, Oxford and Guntersville Railroad Company, or the East Alabama and Cincinnati Railroad Company, before the date of said deed of July 12th, 1871, procured rights of way through Gadsden; then, though this location may have been on a line previously located by plaintiff, plaintiff can not recover as to that part of the road in

the corporate limits of Gadsden." The court refused each of these charges as asked, and the defendant excepted to their refusal.

The rulings of the court on the pleadings and evidence, the charges given, and the refusal of the charges asked, are now assigned as error.

H. C. SEMPLE, and W. H. BARNES, for appellant.

S. F. RICE, with DENSON & DISQUE, *contra.* (No briefs on file.)

STONE, C. J.—This case has been heretofore in this court, and the more important questions raised by the controversy were then decided.—*Tennessee and Coosa Rivers Railroad Co. v. East Ala. Railway Co.*, 75 Ala. 516. We then decided, that the plaintiff had established its right to recover so much of the railroad, right of way and superstructure, as it had located, cleared and graded, and that the East Alabama Railway Company had shown no valid defense to such claim. We held that, by the purchase from the Tennessee and Coosa Rivers Railroad Company, of its track or road-bed, together with the right of way, grading, trestles, masonry work, culverting work, and property on said line so located, the East Alabama and Cincinnati Railroad Company, acquiring its rights and possession under such purchase, was estopped from denying or disputing the title under which it had acquired and held possession. This estoppel applied, as well to the right of way, as to the graded road-bed. It did not lie in the mouth of the purchasing company to assert, what the owners of the freehold failed to assert, namely, that in locating its road, clearing a right of way, and grading the track, the Tennessee and Coosa Rivers Railroad Company was a naked trespasser without right. The owners of the freehold raising no objection, no other person could. We held further, that neither the bankruptcy of the East Alabama and Cincinnati Railroad Company, the sale of the road under the bankruptcy proceeding, nor the foreclosure and sale of the property under the mortgage to Barnes and Clews, impaired plaintiff's right of recovery in the ejectment suit. We will not re-examine these questions.

The present suit was tried on a complaint which originally claimed the entire railroad from Guntersville to Gadsden, and sought to recover it. It was finally narrowed down, until the claim was for that part of "the railroad from Gadsden to Attalla," in Etowah county, shown to be about five miles in length. In the first trial it was shown that, about the years

1854-5, the Tennessee and Coosa Rivers Railroad Company, under its act of incorporation, surveyed, located, cleared and graded its line of railway, from a point where Attalla now stands, to a point near Wragg's mill, ending in a cut of some seven or eight feet, known as "Christopher's Cut," and near the then corporate limits of Gadsden. The proof was, that this part of the railroad remained in this condition, without further work upon it, until the East Alabama and Cincinnati Railroad Company took possession of it, after the contract of purchase was concluded, July 12, 1871. After that time the purchasing company took possession of such graded road between those points, and completed its construction. The rulings of this court were based on the state of the road, as above set forth. No ruling was invoked, or made, except on questions relating to that part of the road which lay between "Christopher's Cut" and the place where Attalla stands, each portion of which was in substantially the same partially completed condition. The present record raises a question not presented on that appeal.

Between the terminus of the grading at "Christopher's Cut" and the Coosa river, is a gap of near a mile, on which no work had been done by the Tennessee and Coosa Rivers Railroad Company, so as to change the surface, or give notice where the line would run. The timber was not cleared off, nor were there any embankments or excavations made. There is some testimony that the engineer, while locating the road in 1854-5, surveyed three lines from "Christopher's Cut" to the river, and set up stakes on each line of survey. There is also oral testimony, by persons who were near and about him, that he expressed a preference and selection of the line on which the road was subsequently built, as we shall hereafter show. The three surveys were left with set stakes, and nothing else, to mark their locality; and such stakes disappeared long before 1869. No report of any selection is shown to have been made by the engineer, nor is any action of the board of directors produced, showing a location of this part of the road. Further than the evidence furnished by these surveys, there is no proof of any possession of this part of the line by the Tennessee and Coosa Rivers Railroad Company. There is, also, imperfection and uncertainty in the attempted proof that this company had obtained the right of way beyond "Christopher's Cut." No paper title is shown, and there is no evidence that any ever was given. There is some oral testimony on the question, but it is indeterminate; and it is left in doubt, whether this relates to the whole, or to only a part of the line beyond "Christopher's Cut." Right of way for a railroad is an easement—an interest in the freehold—which can only

exist in grant, or by prescription. There are no facts shown on which to base any right to this part of the line in the Tennessee and Coosa Rivers Railroad Company, by mere prescription; and there is no proof that such right was ever acquired by grant or conveyance, so as to take it without the operation of the statute of frauds.—Bro. Stat. Frauds, § 232; Washburn on Easements, 3 ed., 38 *et seq.*; Code of 1876, § 2121.

It is contended for appellee, that the East Alabama and Cincinnati Railroad Company acquired its right, and went into possession, under its contract of purchase of July 12, 1871, and, therefore, is estopped from disputing the right and title of the Tennessee and Coosa Rivers Railroad Company, its vendor; and, that corporation being estopped, the present appellant, the East Alabama Railway Company, having acquired all the title it has derivatively from that corporation, is equally estopped. On the former appeal in this cause, we held such was the true rule, to the extent the facts made it applicable. It is undoubtedly the rule as to all that part of the track and right of way, which had been graded and cleared by the plaintiff corporation, before the agreement of sale was entered into, July 12, 1871. Such was the proof, on the former trial, of the status of the work when the contract of sale was entered into. Such was the proof, on the last trial, of that part of the road which lay between Attalla and "Christopher's Cut," near the corporate limits of Gadsden, as they were defined when the survey was made. Of this part only did the appellee have possession, with visible evidences of ownership, and of this part only did the East Alabama and Cincinnati Railroad Company acquire possession after the contract of purchase was entered into.

The East Alabama and Cincinnati Railroad Company had also a charter of incorporation, under which it was authorized to construct a railroad from Eufaula, through Opelika and Oxford, to Guntersville, on the Tennessee River, the northern terminus of the chartered road of the Tennessee and Coosa Rivers Railroad Company. Gadsden was in the line of its route; and on this account it desired to make, and did make, the contract of purchase, out of which this litigation grew. The intention was to utilize the survey and grading of the shorter line from Gadsden to Guntersville, in the construction of the defendant's longer line of road. As we have shown, the contract of purchase was entered into July 12, 1871. Before that time, the East Alabama and Cincinnati Railroad Company had issued its first-mortgage, commercial coupon bonds, to be indorsed by the State under the then existing statutes, to aid in the construction of its railroad. It had also executed its mortgage to trustees to secure the payment of

said bonds—the mortgage bearing date July 1, 1870, and conveying and mortgaging, for such purpose, " the franchises, road, road-bed, right of way, and all of the real and personal property now or hereafter belonging to the company." The said East Alabama and Cincinnati Railroad Company commenced surveying and locating its line of railroad, from the Coosa River at Gadsden, to Attalla, about May, 1870, and completed the grading from the river to " Christopher's Cut," about October, 1870. It also procured the written conveyance of the right of way from some of the owners, over whose lands the line of the road was selected, in the month of June, 1870, before the said mortgage was executed to secure the bondholders. The entire work of surveying, locating and grading the road from the river to " Christopher's Cut" was done by the East Alabama and Cincinnati Railroad Company, and was completed before it negotiated the purchase from the Tennessee and Coosa Rivers Railroad Company. The mortgage executed July 1, 1870, to secure the bonds, evidently embraced and conveyed this section of the railroad line. *Meyer v. Johnston*, 64 Ala. 603. To test this, let us suppose the purchase of one road by the other had never been agreed on, and a question of paramount right had arisen between the bondholders, or the trustees, on the one side, and the Tennessee and Coosa Rivers Railroad Company on the other. On the facts stated above, no one could question the superior right of the bondholders secured by the mortgage. And if it be true, as contended for by appellee (we need not, and do not, admit its correctness), that the appellant railroad company acknowledged appellee's right to the entire line extending to the river, by contracting to purchase it July 12, 1871, this can not impair nor weaken the already secured rights of the mortgagees, who were not parties to such contract, however much it might conclude the purchasing corporation.

We have been referred to several authorities, which, it is contended, sustain the argument made by appellee. None of them are opposed to the views above expressed.—See *Morris & Essex R. R. Co. v. Blair*, 1 Stockt. Ch. 635 ; *Mason v. B. & N. R. R. Co.*, 35 Barb. 373 ; *A. T. & Sante Fe R. R. Co. v. Mecklim*, 23 Kans. 167; *Van Wyck v. Nevals*, 106 U. S. 360 ; *Camp v. Camp*, 13 Amer. Dec. 60, and note.

Special proof that the plaintiff corporation had acquired the right of way over the lands between Attalla and " Christopher's Cut," was wholly unnecessary. The defendant was estopped by its contract of purchase, and possession thereunder, from raising that question. We deem it unnecessary to notice any other exception, or assignment of error, as we

believe what is said above will enable the Circuit Court to rule correctly on another trial.

Reversed and remanded.